IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.1:24-cv-2333 |
| v. | ) | |
| | ) | |
| FIJI CONSTRUCTION, INC.; CHAD | ) | |
| HAGEN; JUAN ANTONIO VELASCO a/k/a | ) | |
| BALVINO MENDOZA; and STATE | ) | |
| NATIONAL INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its attorneys, Dana A. Rice and Adam P. Joffe of Traub Lieberman Straus & Shrewsberry, LLP, and for its Complaint for Declaratory Judgment against Defendants, Fiji Construction, Inc. ("Fiji Construction"); Chad Hagen ("Hagen"); Juan Antonio Velasco a/k/a Balvino Mendoza ("Velasco"); and State National Insurance Company, Inc. ("State National"), it states as follows:

## THE PARTIES

1.      Nautilus is, and at all relevant times has been, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona. At all times relevant hereto, Nautilus was a surplus lines insurer whose policies may be sold in Illinois.

2.      At all times relevant hereto, Fiji Construction was a corporation organized under the laws of Illinois with its principal place of business in Cary, Illinois.

3.      At all times relevant hereto, Hagen was a citizen of Illinois.

4.      At all times relevant hereto, Velasco was a citizen of Illinois.

5.      State National is, and at all relevant times has been, a corporation organized under the laws of Texas with its principal place of business in Bedford, Texas.

1

## JURISDICTION

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, the case relates to an insurance policy that provides well in excess of $75,000 in coverage for covered claims, and the underlying lawsuit, which gives rise to this insurance coverage action, seeks damages for serious injuries that Velasco allegedly sustained.

## VENUE

7.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to this litigation occurred in this judicial district, and because at least one of the defendants is a resident of this judicial district and all defendants are residents of the State of Illinois.

## FACTUAL BACKGROUND

### I.    The *Velasco* Lawsuit

8.    On or about June 12, 2022, Velasco filed a Complaint at Law against Larry Ekstrom ("Ekstrom"); Lake County Home Remodeling ("Lake County"); Ana S. Chavez ("Chavez"); Jesus Gutierrez ("Gutierrez"); Fiji Construction; and Hagen in the Circuit Court of Cook County, Illinois, under Case Number 2022 L 004881 ("*Velasco* Lawsuit"). (A true and correct copy of the *Velasco* Lawsuit is attached hereto as **Exhibit A** and incorporated herein by reference.)

9.    The *Velasco* Lawsuit arises out of injuries that Velasco allegedly sustained when he fell from a roof while working on a property located at 407 Farnsworth Circle, Port Barrington, Illinois. (Ex A.)

10.    The *Velasco* Lawsuit alleges that, on or about June 6, 2020, Ekstrom was the owner of the Property. (Ex. A, ¶ 1.)

2

11. The *Velasco* Lawsuit further alleges that Lake County, Chavez, Gutierrez, Fiji Construction, and Hagen were "engaged in the construction, remodeling, roofing, and renovation project" at the Property. (Ex A., Counts III-XII.)

12. Each of these Defendants was alleged to have been in control of the Property and allegedly "participated in the coordination of the work being done and designed various work methods, maintained and checked work progress, dictated the operative details of the work and participated in the inspection of the work being done." (Ex. A, Counts III-XII.)

13. The *Velasco* Lawsuit further alleges that on June 6, 2020, Velasco "was lawfully on the said premises," where he was doing work on the Property. (Ex. A, ¶¶ 4, 10.)

14. Per the *Velasco* Lawsuit, the Defendants breached their duties to exercise ordinary care by failing to have working fall protection systems in place, utilizing faulty equipment, and failing to post warning signs about the dangers at the Property. (Ex. A, Counts III-XII.)

15. The *Velasco* Lawsuit alleges that Velasco "while working on the [Property] and by reasons of the direct and proximate result of the negligence of the Defendant[s], by their agents, servants and employees, in whole or in part, as hereinafter specified…was caused to and did fall to the ground, causing him to suffer severe and permanent injuries, and great bodily pain and suffering…" (Ex. A, ¶ 10.)

16. The *Velasco* Lawsuit specifically alleges that Defendants negligently: (1) failed to supervise their employees who were working within the Property; (2) failed to maintain proper safety measures for persons working in and about the Property; (3) failed to properly monitor and control work being performed by employees/agents/servants performing work on the Property; (4) failed to take necessary precautions for the safety of persons working on the Property; (5) failed to take necessary precautions for the safety of persons working on the roof; (6) built, operated,

3

constructed, and maintained the roof absent proper screens, guards, nets, or fall protective devices; (7) failed to follow state, county, and municipal codes, (8) failed to provide Velasco with safe and suitable support and fall protection; and (9) failed to provide Velasco with a proper staging area that was unobstructed with construction hazards. (Ex. A, Counts III-XII.)

17.    Per the *Velasco* Lawsuit, Velasco "injured his head, body, and limbs, both externally and internally, and muscles, ligaments, tissues, nerves and blood vessels in his head, body, and limbs were bruised, lacerated, torn, and injured…" (Ex. A, ¶ 13.)

18.    The *Velasco* Lawsuit alleges that Velasco has been faced with substantial medical payments and lost income. (Ex. A, ¶ 13.)

19.    Counts I, III, V, VII, IX, and XI of the *Velasco* Lawsuit assert claims under "Restatement (Second) of Torts § 414" (which addresses liability for retained control of the Property) against each of the six Defendants.

20.    Counts II, IV, VI, VIII, X, and XII of the *Velasco* Lawsuit assert claims under "Restatement (Second) of Torts § 343" (which addresses premises liability) against each of the six Defendants.

**II.    Subcontractor Agreement Between Fiji Construction and Lake County**

21.    As it relates to the construction project on the Property, Fiji Construction (as contractor) and Lake County (as subcontractor) entered into a Subcontractor Agreement ("Subcontractor Agreement").  (A true and accurate copy of the Subcontractor Agreement is attached hereto as **Exhibit B.**)

22.    The Subcontractor Agreement was signed by Gutierrez for Lake County. (Ex. B.)

23.     The Subcontractor Agreement provided, in pertinent part, the following with respect to the insurance requirements of the parties:

**XII.** **Insurance.** The Contractor shall require the Subcontractor, along with reach of its subcontractors, to have insurance set forth in this Section under the following terms and conditions before commencing Services: General Liability Insurance, Excess Liability Insurance

> **General Liability Insurance.** Subcontractor shall carry minimum primary General Liability Insurance for the following amounts:
>
> $1,000,000.00 Combined Single Limit: Bodily Injury + Property Damage;
> $1,000,000.00 Personal Liability Injury;
> $2,000,000.00 Aggregate for Products-Completed Operations; and
> $2,000,000.00 General Aggregate. This shall apply separately to the Services provided by the Subcontractor.
>
> **Additional Insurance Requirement.** Client, Contractor, and any other entity which the Contractor is required to name as an additional insured under the Prime Contract shall be named as additional insureds under the General Liability Insurance required by this Section and any such insurance afforded the addition[al] insureds shall apply as primary insurance. Any other insurance maintained by the Client or Contractor shall be excess insurance and shall not be called upon to contribute to Subcontractor's primary or excess insurance carrier's duty to defend or indemnify unless required by law. The excess insurance required above shall also afford additional insured protection to Client and Contractor. This Section shall, in no event, by construed to require that additional insurance coverage be provided to a greater extent than permitted under the statutes or public policy governed under State law.
>
> **Excess Liability Insurance.** $0 minimum required insurance policy for anything other than General Liability or Automobile coverage.
>                                              * * *

(Ex. B.)

24.     Under the terms of the Subcontractor Agreement, Lake County had a duty to procure general liability coverage and to name Fiji Construction as an additional insured. (Ex. B.)

25.     The Subcontractor Agreement also provided, in pertinent part, the following with respect to the indemnification requirements of the parties:

> **XXIII. Indemnification.** To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless the Client and the Contractor along with any of their agents, employees, or individuals associated with their organization from claims, demands, causes of actions and liabilities of any kind and nature whatsoever arising out of or in connection with the Subcontractor's Services or

operations performed under this Agreement and caused or alleged to be caused, in whole or in part, by any act or omission of the Subcontractor or on Subcontractor's account related to Subcontractor's services hereunder. This indemnification shall extend to claims occurring after this Agreement is terminated as well as while it is in force. The indemnity shall apply regardless of any passively negligent act or omission of the Client or Contractor, or their agents or employees, but Subcontractor shall not be obligated to indemnify any party for claims arising from the active negligence, sole negligence, or willful misconduct of Client or Contractor or their agents or employees or arising solely by the designs provided by such parties. To the extent that State law limits the defense or indemnity obligations of the Subcontractor either to Contractor or Client, the intent hereunder is to provide the maximum defense and indemnity obligations allowed by the Subcontractor under the law. The indemnity set forth in this Section shall not be limited by any insurance requirement or any other provision of this Agreement.

(Ex. B.)

### III.   The State National Policy and Tender

26.   State National issued a commercial general liability insurance policy to Lake County through policy number NXT9Y08UF8-01-GL for the policy period of January 22, 2020 to January 22, 2021 ("State National Policy").

27.   On information and belief, the State National Policy provides coverage to Fiji Construction as an additional insured, on a primary and noncontributory basis.

28.   Through correspondence dated July 6, 2022, Nautilus formally tendered the defense of Fiji Construction and Hagen (Fiji Construction's owner) in the *Velasco* Lawsuit to State National for defense and indemnification. (A true and correct copy of the July 6, 2022 letter is attached hereto as **Exhibit C.)**

29.    In more than 18 months since the tender of the defense of the *Velasco* Lawsuit to State National, State National has never accepted the defense of Fiji Construction and/or Hagen, has never provided a formal response to the July 6, 2022 tender letter, or filed a declaratory judgment action against Fiji Construction and/or Hagen seeking a declaration that it does not owe a duty to defend or indemnify them in the *Velasco* Lawsuit under the State National Policy.

6

30.     State National had notice of the *Velasco* Lawsuit by approximately July 6, 2022. (Ex. C.)

31.     Because State National has not responded to the July 6, 2022, tender letter, Nautilus does not possess a copy of the State National Policy.

### IV.     __The Nautilus Policy__

32.     Nautilus issued a commercial general liability insurance policy to Fiji Construction under policy number NC219262 for the policy period of June 20, 2019 through June 20, 2020 ("Nautilus Policy"). (A true and correct copy of the Nautilus Policy is attached hereto as **Exhibit D.**)

33.     The Nautilus Policy provides, among other things, commercial general liability coverage subject to a liability limit of $1,000,000 per occurrence and a general aggregate limit of $2,000,000. (Ex. D.)

34.     Nautilus is currently defending Fiji Construction and Hagen in the *Velasco* Lawsuit under a reservation of rights.

### COUNT I

### THE "INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND OTHER WORKERS" EXCLUSION BARS COVERAGE FOR THE *VELASCO* LAWSUIT

35.     Nautilus adopts and realleges the allegations in paragraphs 1 through 34 of its Complaint for Declaratory Judgment as paragraph 35 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

36.     Coverage A of the Nautilus Policy provides, in relevant part, the following with respect to the liability coverage afforded therein:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)      The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2)      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b.      This insurance applies to "bodily injury" and "property damage" only if:

(1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)      The "bodily injury" or "property damage" occurs during the policy period …

\* \* \*

(*See* Ex. D.)

37.      The Nautilus Policy also includes Form L205 (11/10), which provides the following:

**EXCLUSION – INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND WORKERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **e. Employer's Liability** under Paragraph **2**., **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**e.** **Injury to Employees, Contractors, Volunteers and Other Workers**

"Bodily injury" to:

**(1)** "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

**(2)** Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

**(a)** Employment by any insured; or

**(b)** Directly or indirectly performing duties related to the conduct of any insured's business; or

**(3)** The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of Paragraph **(1)** or **(2)** above.

This exclusion applies:

**(1)** Regardless of where the:

**(a)** Services are performed; or

**(b)** "Bodily injury" occurs; and

        **(2)**    Whether any insured may be liable as an employer or in any other capacity; and

        **(3)**    To any obligation to share damages with or replay someone else who must pay damages because of the injury.

**B**.    Exclusion **a. Any Insured** of **2., Exclusions** of **Section I – Coverage C – Medical Payments** is **replaced** by the following:

We will not pay expenses for "bodily injury":

    **a.**    **Any Insured**

    To any insured.

(hereinafter referred to as the "Injury to Workers Exclusion.") (*See* Ex. B.)

38.    The Nautilus Policy defines the terms "bodily injury", "employee," "leased worker", "occurrence", "temporary worker", and "volunteer worker" as follows:

**SECTION V – DEFINITIONS**

\* \* \*

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**5.**    "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\* \* \*

**10.**    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a temporary worker.

\* \* \*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**19.**    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave to meet seasonal or short-term workload conditions.

\* \* \*

**20.**    "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

(*See* Ex. D.)

39.     At the time of the accident giving rise to the *Velasco* Lawsuit, Velasco was an employee of Lake County.

40.     At the time of the accident giving rise to the *Velasco* Lawsuit, Lake County was a contractor or subcontractor of Fiji Construction pursuant to the terms of the parties' Subcontractor Agreement.  (*See* Ex. B.)

41.     Accordingly, the Nautilus Policy's Injury to Workers Exclusion bars coverage for Fiji Construction and Hagen for the claims asserted in the *Velasco* Lawsuit.

42.     Specifically, as noted above, Paragraph A.e.(1) of the Injury to Workers Exclusion bars coverage for "bodily injury" to "'[e]mployees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', casual workers, seasonal workers, contractors, subcontractors, or independent contractors of *any* insured."  Additionally, Paragraph A.e.(2) of the Injury to Workers Exclusion bars coverage for "bodily injury" to "***any*** insured's contractors', subcontractors', or independent contractors' 'employees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', casual workers, seasonal workers, contractors, subcontractors, or independent contractors." (Ex. B.)

43.     Velasco was an employee of any insured's (i.e., Fiji Construction's) contractor or subcontractor and, therefore, the Injury to Workers Exclusion bars coverage for ***all*** insureds under the Nautilus Policy for the claims asserted in the *Velasco* Lawsuit. (Ex. B.)

44.     To the extent the *Velasco* Lawsuit alleges "bodily injury" resulting from an "occurrence," the Injury to Workers Exclusion bars coverage under the Nautilus Policy for Fiji Construction and Hagen for the claims asserted in the *Velasco* Lawsuit.

45. Nautilus has and had no duty under the Nautilus Policy to defend Fiji Construction and/or Hagen against the *Velasco* Lawsuit, or to indemnify them for any judgment or settlement entered in the *Velasco* Lawsuit.

46. An actual controversy exists between Nautilus, Fiji Construction, Hagen, Velasco, and State National, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

    b. Find and declare that the Nautilus Policy's Injury to Workers Exclusion bars coverage for the claims asserted in the *Velasco* Lawsuit;

    c. Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend Fiji Construction and/or Hagen against the *Velasco* Lawsuit, or to indemnify Fiji Construction and/or Hagen for any judgment or settlement entered therein; and

    d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

**COUNT II**

**PLEADING IN THE ALTERNATIVE, FIJI CONSTRUCTION AND HAGEN ARE
ADDITIONAL INSUREDS ON THE STATE NATIONAL POLICY, AND STATE
NATIONAL OWES A PRIMARY DUTY TO DEFEND FIJI CONSTRUCTION AND
HAGEN IN THE *VELASCO* LAWSUIT**

47.     Nautilus adopts and realleges the allegations in paragraphs 1 through 46 of its

Complaint for Declaratory Judgment as paragraph 47 of Count II of its Complaint for Declaratory

Judgment as if fully set forth herein.

48.     The Nautilus Policy contains the following "Other Insurance" provision:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
* * *

**4.      Other Insurance**

If other valid and collectible insurance is available to the insured for a loss
we cover under Coverages **A** or **B** of this Coverage Part, our obligations are
limited as follows:

**a.      Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies.
If this insurance is primary, our obligations are not affected unless
any of the other insurance is also primary.  Then, we will share with
all that other insurance by the method described in Paragraph **c.**
below.

**b.      Excess Insurance**

**(1)      This insurance is excess over:**
* * *

**(b)      Any other primary insurance available to you
covering liability for damages arising out of the
premises or operations, or the products and
completed operations, <u>for which you have been
added as an additional insured.</u>**

**(2)**      When this insurance is excess, we will have no duty under
Coverages **A** or **B** to defend the insured against any "suit" if
any other insurer has a duty to defend the insured against that
"suit".  If no other insurer defends, we will undertake to do
so, but we will be entitled to the insured's rights against all
those other insurers.

13

      **(3)**     When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

           **(a)**     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

           **(b)**     The total amount of all deductible and self-insured amounts under all that other insurance.

      **(4)**     We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

      (Ex. D, emphasis added.)

49. The *Velasco* Lawsuit alleges that Lake County negligently: (1) failed to supervise their employees who were working within the Property; (2) failed to maintain proper safety measures for persons working in and about the Property; (3) failed to properly monitor and control work being performed by employees/agents/servants performing work on the Property; (4) failed to take necessary precautions for the safety of persons working on the Property; (5) failed to take necessary precautions for the safety of persons working on the roof; (6) built, operated, constructed, and maintained the roof absent proper screens, guards, nets, or fall protective devices; (7) failed to follow state, county, and municipal codes, (8) failed to provide Velasco with safe and suitable support and fall protection; and (9) failed to provide Velasco with a proper staging area that was unobstructed with construction hazards. (Ex. A, Counts III and IV.)

50. Under the terms of the Subcontractor Agreement, Lake County owed a duty to procure general liability coverage naming Fiji Construction and Hagen as additional insureds. (Ex. B.)

51.     Upon information and belief, Fiji Construction and Hagen qualify as additional insureds under the State National Policy because Fiji Construction and Hagen are potentially liable in the *Velasco* Lawsuit for the acts or omissions of Lake County. (Ex. A.)

52.     State National had notice of the *Velasco* Lawsuit by approximately July 6, 2022. (Ex. C.)

53.     State National did not agree to defend Fiji Construction and/or Hagen, or file a declaratory judgment to seek a finding regarding its duties and obligations under the State National Policy, and therefore, State National has breached its duty to defend Fiji Construction and Hagen in the *Velasco* Lawsuit.

54.     At all times, Nautilus has defended Fiji Construction and Hagen in the *Velasco* Lawsuit under a reservation of rights.

55.     Because, on information and belief, Fiji Construction and Hagen are additional insureds by endorsement on the State National Policy, the Nautilus Policy provides only excess coverage and the State National Policy provides primary coverage.

56.     Because the State National Policy provides primary coverage and the Nautilus Policy provides excess coverage, Nautilus does not owe a duty to defend Fiji Construction and/or Hagen in the *Velasco* Lawsuit.

57.     Accordingly, Nautilus is entitled to reimbursement of all defense fees and costs it incurred in defending Fiji Construction and Hagen in the *Velasco* Lawsuit.

58.     An actual controversy exists between Nautilus, Fiji Construction, Hagen, Velasco, and State National, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a.    Declare that Fiji Construction and Hagen are additional insureds on the State National Policy;

    b.    Declare that State National breached its duty to defend Fiji Construction and Hagen in the *Velasco* Lawsuit and, therefore, owes Fiji Construction and Hagen a duty to defend in the *Velasco* Lawsuit on a going forward basis;

    c.    Declare that any coverage afforded to Fiji Construction and Hagen under the Nautilus Policy is excess to the coverage afforded to them by the State National Policy;

    d.    Declare that Nautilus is entitled to reimbursement of all defense fees and costs it incurred in defending Fiji Construction and Hagen in the *Velasco* Lawsuit;

    e.    Declare that Nautilus has no duty to defend Fiji Construction and Hagen in the *Velasco* Lawsuit because the Nautilus Policy provides excess coverage to Fiji Construction and Hagen; and

    f.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## PLEADING IN THE ALTERNATIVE, STATE NATIONAL IS ESTOPPED FROM RAISING POLICY DEFENSES

59.    Nautilus adopts and realleges the allegations in paragraphs 1 through 58 of its Complaint for Declaratory Judgment as paragraph 59 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

60.    Through correspondence dated July 6, 2022, Nautilus formally tendered the defense of Fiji Construction and Hagen (Fiji Construction's owner) in the *Velasco* Lawsuit to State National. (Ex. C.)

61.    Thus, State National had notice of the *Velasco* Lawsuit by approximately July 6, 2022. (Ex. C.)

16

62.     In more than 18 months since the tender of the defense of the *Velasco* Lawsuit to State National, State National has never accepted the defense of Fiji Construction and/or Hagen, has never provided a formal response to the July 6, 2022 tender letter, or filed a declaratory judgment action against Fiji Construction and/or Hagen seeking a declaration that it does not owe a duty to defend or indemnify them in the *Velasco* Lawsuit under the State National Policy.

63.     As a result, State National has breached its duty to defend Fiji Construction and Hagen in the *Velasco* Lawsuit and is, therefore, estopped from raising any defenses to coverage under the State National Policy.

64.     An actual controversy exists between Nautilus, Fiji Construction, Hagen, Velasco, and State National, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.      Declare that State National breached its duty to defend Fiji Construction and Hagen in the *Velasco* Lawsuit;

b.      Declare that State National is estopped from raising any defenses to coverage under the State National Policy;

c.      Declare that State National has a duty to defend and indemnify Fiji Construction and Hagen, on a primary non-contributory basis; and

c.      Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## PLEADING IN THE ALTERNATIVE, EQUITABLE SUBROGATION OF DEFENSE FEES AND COSTS

65.     Nautilus adopts and realleges the allegations in paragraphs 1 through 64 of its Complaint for Declaratory Judgment as paragraph 65 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

66.     Nautilus has at all times defended Fiji Construction and Hagen in the *Velasco* Lawsuit under the Nautilus Policy subject to a reservation of rights.

67.     The Nautilus Policy provides excess coverage to Fiji Construction and Hagen in the *Velasco* Lawsuit.

68.     On information and belief, the State National Policy provides primary coverage to Fiji Construction and Hagen in the *Velasco* Lawsuit.

69.     State National owes a duty to defend and indemnify Fiji Construction and Hagen in the *Velasco* Lawsuit as the primary insurer, while Nautilus is an excess insurer for Fiji Construction and Hagen.

70.     Because Nautilus paid Fiji Construction's and Hagen's defense fees and costs in the *Velasco* Lawsuit under reservation of rights, Nautilus is entitled to reimbursement from State National of all defense costs and fees Nautilus has incurred in defending Fiji Construction and Hagen in the *Velasco* Lawsuit.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.      Declare that because the Nautilus Policy is excess to the State National Policy and because State National owes a primary duty to defend Fiji Construction and Hagen in the *Velasco* Lawsuit, Nautilus is entitled to reimbursement of all defense fees and costs it has expended defending Fiji Construction and Hagen in the *Velasco* Lawsuit; and

18

b.  Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT V

## PLEADING IN THE ALTERNATIVE, EQUITABLE CONTRIBUTION

71.  Nautilus adopts and realleges the allegations in paragraphs 1 through 70 of its Complaint for Declaratory Judgment as paragraph 71 of Count V of its Complaint for Declaratory Judgment as if fully set forth herein.

72.  Nautilus has at all times defended Fiji Construction and Hagen in the *Velasco* Lawsuit under the Nautilus Policy subject to a reservation of rights.

73.  The Nautilus Policy provides excess coverage to Fiji Construction and Hagen in the *Velasco* Lawsuit.

74.  On information and belief, the State National Policy provides primary coverage to Fiji Construction and Hagen in the *Velasco* Lawsuit.

75.  In the alternative, however, should this Court determine that State National and Nautilus owe a co-primary duty to defend Fiji Construction and Hagen in the *Velasco* Lawsuit, Nautilus is entitled to reimbursement from State National of one-half of the defense costs it Nautilus paid defending Fiji Construction and Hagen in the *Velasco* Lawsuit.

76.  Because Nautilus paid Fiji Construction's and Hagen's defense fees and costs in the *Velasco* Lawsuit under reservation of rights, Nautilus is entitled to equitable contribution from State National as to its share of the defense costs.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.  Declare that Nautilus is entitled to reimbursement from State National of one-half of the defense fees and costs Nautilus paid to defend Fiji Construction and Hagen in the *Velasco* Lawsuit *if* the Court finds that State National and Nautilus owe a co-primary duty to defend Fiji Construction and Hagen in the *Velasco* Lawsuit; and

b.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

Respectfully submitted,

TRAUB     LIEBERMAN     STRAUS     &
SHREWSBERRY LLP


/s/ Dana A. Rice
Dana A. Rice

Dana A. Rice (6283827)
Adam P. Joffe (6300116)
Traub Lieberman Straus & Shrewsberry LLP
71 South Wacker Drive
Suite 2110
Chicago, IL 60606
Telephone: 312-332-3900
drice@tlsslaw.com
ajoffe@tlsslaw.com